## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SANDRA KLUESSENDORF, on behalf of herself and all others similarly situated, | |
| *Plaintiff*, | CIVIL ACTION NO: |
| v. | |
| UNITED SUGAR PRODUCERS & REFINERS COOPERATIVE F/K/A UNITED SUGARS CORPORATION, AMERICAN SUGAR REFINING, INC., ASR GROUP INTERNATIONAL, INC., DOMINO FOODS, INC., CARGILL, INC., MICHIGAN SUGAR COMPANY, COMMODITY INFORMATION, INC., and RICHARD WISTISEN, | **CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |
| *Defendants*. | |

Plaintiff Sandra Kluessendorf ("Plaintiff"), individually and on behalf of all others similarly situated (the "Classes" "or "Class Members" as defined below), files this Class Action Complaint ("Complaint") against Defendants United Sugar Producers & Refiners Cooperative f/k/a United Sugars Corporation, American Sugar Refining, Inc., ASR Group International, Inc., Domino Foods, Inc., Cargill, Inc., and Michigan Sugar Company (collectively, "Producing Defendants"), and Commodity Information, Inc. and Richard Wistisen (collectively, "Commodity").

Plaintiff and the Classes seek injunctive relief, treble damages, costs, attorneys' fees, and other just relief for Defendants' *per se* violations of Section 1 of the Sherman Act, 15 U.S.C § 1, state antitrust laws, unfair competition laws, consumer protection laws, and unjust enrichment laws of the several States. The following allegations are based on personal knowledge as to Plaintiff's own conduct and on the investigation conducted by her counsel as to all other allegations. Plaintiff demands a trial by jury.

## I.    NATURE OF THE ACTION

1.    Plaintiff brings this civil antitrust action seeking treble damages arising out of Defendants' conspiracy to fix, raise, maintain, and stabilize the prices of Granulated Sugar[1] and allocate and unreasonably restraint trade in the market for Granulated Sugar sold in the United States from January 1, 2019, until such time as the anticompetitive effects of the conduct cease ("Class Period").

2.    Granulated Sugar, like salt and flour, are staples of food preparation and are found in nearly every American kitchen. Granulated Sugar is used in a variety of different

---

[1] "Granulated Sugar" is white table sugar made from either cane or beet sugar that has gone through a refining process to remove the molasses and extract the sucrose, creating relatively large uniform crystals.

preparations, such as baking, sweetening, and making sauces.   American adults, on average, consume 60 pounds of added sugar each year.[2]

3.      In 2023, the market for Granulated Sugar in the United States totaled $13.2 billion.

4.      The sugar Producing Defendants named in this Complaint have an estimated combined market share of at least 68% in the United States Granulated Sugar market.

5.      In order to maximize profits, at the expense of consumers, Defendants engaged in the anticompetitive conduct alleged herein.  Specifically, Defendants used Commodity and Wistisen as a conduit of communications, allowing them to fix the price of Granulated Sugar in the Relevant Market through the exchange of detailed, competitively sensitive, non-public information regarding Granulated Sugar prices, capacity, sales, volume, supply and demand.

6.      Plaintiff and Class members are the end-user purchasers of Granulated Sugar.

7.      Defendants' conspiracy artificially inflated the price of Granulated Sugar and caused Plaintiff and Class Members to pay more for Granulated Sugar than they would have but for the conspiracy.  Defendants' illegal conduct has harmed Plaintiff and Class members. Plaintiff and members of the Classes are therefore entitled to damages and all other remedies permitted by law.

## II.      JURISDICTION AND VENUE

8.      Plaintiff brings this action on behalf of the Nationwide Class (defined below) under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). This court has subject

---

[2] https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/how-much-sugar-is-too-much#:~:text=American%20adults%20consume%20an%20average,%2Dpound%20bowling%20balls%2C%20folks!

matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

9.      This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, there are more than 100 putative members of the Classes and some members of the proposed Classes are citizens of a state different from some Defendants.

10.     Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b), (c), and (d) because one or more of the Defendants transacted business, was found, and/or resided in this District; a substantial part of the events giving rise to Plaintiffs' claims arose in this District; and/or a substantial portion of the affected interstate trade and commerce described herein has been carried out in this District.

11.     This Court also has supplemental jurisdiction over violations of state antitrust and state consumer protection law. All claims under federal and state law are based upon a common nucleus of operative fact. Therefore, the entire action should be commenced in a single case to be tried as one judicial proceeding. This Court, therefore, has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a). Exercising jurisdiction over the state-law claims will avoid unnecessary duplication of actions and support the interests of judicial economy, convenience to the litigants, and fairness.

12.     Defendants' unlawful conduct substantially affected interstate trade and commerce throughout the United States, proximately causing injury to Plaintiff and the geographically disperse Class Members.

### III.    PARTIES

#### A.    Plaintiff

13.    Plaintiff Sandra Kluessendorf is a citizen of Wisconsin.  During the Class Period, she indirectly purchased Granulated Sugar from one of the Producing Defendants in Minnesota and Wisconsin for personal use and suffered injury as a result of the unlawful conduct alleged herein.

#### B.    Defendants

14.    Defendant United is a Minnesota corporation with its principal place of business in Edina, Minnesota.  Four member-owners comprise United: United States Sugar Corporation ("U.S. Sugar"); American Crystal Sugar Company; Minn-Dak Farmers Cooperative; and Wyoming Sugar Company, LLC.  United sells Granulated Sugar primarily under the brand name Crystal Sugar.  According to its website: "From a sugar supply standpoint, we are the most reliable sugar producer in the U.S. due to our volume capabilities and coast-to-coast distribution network. Unlike other sugar suppliers, our sales team, customer service team and quality assurance team are solely focused on sugar, no other commodities."[3]

15.    Defendant ASR Group International, Inc. is a privately held Florida corporation and global producer of Granulated Sugar based in West Palm Beach, Florida. ASR Group claims to be "the world's largest refiner and marketer of cane sugar."[4]

16.    Defendant American Sugar Refining, Inc. is a privately held Florida corporation and global producer and seller of Granulated Sugar based in West Palm Beach, Florida.  ASR is an affiliate and/or subsidiary of ASR Group.

---

[3] FAQs, UNITEDSUGARPR.COM, https://unitedsugarpr.com/faq/, (last accessed May 22, 2024).

[4] Homepage, ASR-GROUP.COM, https://www.asr-group.com/ (last accessed May 22, 2024).

17.    Defendant Domino Foods, Inc. is a subsidiary belonging to ASR Group and ASR and serves as the marketing and sales subsidiary for ASR's production of Granulated Sugar. Domino maintains a principal place of business in West Palm Beach, Florida.  ASR/Domino sells Granulated Sugar in the United States under the brands Domino, C&H, and Florida Crystals, as well as internationally under the brands Redpath, Tate & Lyle, Lyle's, and Sidul.[5]

18.    Defendant Cargill is a Delaware corporation with its principal place of business in Minnetonka, Minnesota. Cargill is a global producer and seller of Granulated Sugar. According to its website, "Cargill is proud to be one of the leading sugar marketers in North America. No matter what your sugar requirements – granulated sugar, refined sugar, liquid sucralose – Cargill has the right product to deliver the taste and texture you demand."[6]

19.    Defendant Michigan Sugar Company, a Michigan corporation, is a cooperative consisting of 900 sugar beet grower-owners. It is headquartered in Bay City, Michigan and has sugar beet processing facilities in Bay City, Caro, Croswell, and Sebewaing, Michigan. Michigan Sugar also has warehouse facilities in Michigan and Ohio.

20.    Defendant Commodity is a Delaware corporation with its principal place of business in Orem, Utah. Commodity publishes a monthly report called the "Domestic Sugar Monthly Report" that contains information about, among other things, sugar supply and demand and sugar spot pricing guidance. Throughout the Class Period, Defendant Commodity facilitated exchanges of detailed, non-public, competitively sensitive information regarding, among other things, prices (including prospective prices), capacity, sales volume, and demand among the Producing Defendants in furtherance of the conspiracy.

---

[5] Who We Are, ASR-GROUP.COM, https://www.asr-group.com/about-us/our-owners/ (last accessed May 22, 2024).

[6] Sugar, CARGILL.COM, https://www.cargill.com/food-beverage/na/sugar (last accessed May 22, 2024).

21.     Defendant Wistisen is a Granulated Sugar industry analyst and principal of Commodity, who, as part of Defendants' unlawful agreement, collected and shared confidential, proprietary and competitively sensitive non-public information between the Producing Defendants.

22.     Each Defendant participated in the conspiracy to artificially inflate the price of Granulated Sugar and committed overt acts in furtherance of this conspiracy as alleged herein in this District and the United States.

23.     The term "Defendants" as used in this Complaint refers to and encompasses each Defendant and its successors, parent companies, subsidiaries, affiliates, employees, agents, officers, and directors.

## IV.     AGENTS AND CO-CONSPIRATORS

24.     Additional persons and entities not named as Defendants in this Complaint have participated as co-conspirators with Defendants and have performed acts in furtherance of the conspiracy.

25.     Defendants are jointly and severally liable for the acts of the co-conspirators whether or not named as defendants in this Complaint.

26.     Each Defendant was a co-conspirator with each other Defendant. As such, each committed overt acts in furtherance of the conspiracy in the United States as well as within this district.

## V.     FACTUAL ALLEGATIONS

### A.     The Granulated Sugar Market

27.     "Granulated Sugar" is a product made from cane sugar or beet sugar.  Whether made from sugar cane or beets, the resulting Granulated Sugar is chemically the same. Granulated Sugar is created from either source through a refining process that removes molasses

and extracts sucrose.  Once extracted, the sucrose is ground into uniform crystals making it "Granulated Sugar."  Granulated Sugar is a commodity product with little or no product differentiation based on processor.  Over 80% of all sugar consumed is Granulated Sugar.

28.    Granulated Sugar is a common ingredient found in a wide variety of products.  It is commonly utilized by both commercial users and end-user consumers as an ingredient to sweeten foods and drinks.  Granulated Sugar is the predominant form of sugar sold in the United States and can be found in almost every kitchen in America.

29.     The Relevant Market in this case is the market for Granulated Sugar in the United States.  In 2023, the market for Granulated Sugar in the United States totaled $13.2 billion and is projected to reach an estimated $13.5 billion in revenue in 2024.

30.    During the Class Period, the Producing Defendants controlled a majority of the Relevant Market with an estimated combined market share of at least 68% in the United States.

31.    While some large commercial users purchase Granulated Sugar directly from the Producing Defendants, many purchase Granulated Sugar indirectly through intermediaries such as sugar wholesale distributors, food service distributors, or grocery retailers.  Consumer end-users purchase Granulated Sugar indirectly ("indirect purchasers"), typically through retail stores.  Ultimately, it is the indirect purchasers that pay the final supracompetitive prices in the relevant market.

32.    During the Class Period, the Producing Defendants, either directly or through their subsidiaries or affiliates, sold Granulated Sugar in the United States in a continuous and uninterrupted flow of interstate commerce, including in, into, and from this District.

**B.    Defendants' Conspiracy to Artificially Fix Granulated Sugar Prices**

33.    The Producing Defendants have participated in a conspiracy to restrain trade by artificially raising, fixing, stabilizing, or maintaining Granulated Sugar prices in the United

States throughout the Class Period.  In implementing their agreement, the Producing Defendants

shared accurate, non-public, competitively sensitive information with each other, both directly

and through Defendants Commodity and Wistisen.

34.    There is no economically rational reason for the Producing Defendants to share

competitively sensitive information with their competitors.  Instead, this information was shared

for the explicit purpose of carrying out their unlawful scheme and to avoid competition on the

merits.

35.    Despite claiming that it offers analysis of the sugar industry, Defendant

Commodity has no public presence.  It does not have a website, it does not advertise its services

to the public, and it does not publish publicly available reports or other analyses on the sugar

industry or offer to sell or provide any reports or analysis to anyone but a select few (i.e., the

Producing Defendants or other refiners who share their competitively sensitive information).  In

addition, these reports are not made available to the Producing Defendants' customers or

consumers, thereby giving the Producing Defendants an unfair competitive advantage over other

market participants.

36.    Commodity collects and shares information on the Producing Defendants' current,

future or forward pricing, pricing strategies, copy size/yields, sold positions, spot prices, and

contract prices.  However, the information Commodity shares with the Producing Defendants is

not obtained through anonymous surveys or polling, and is not aggregated.  Rather, the

Producing Defendants regularly shared competitively sensitive information about their pricing

and sold positions with Commodity, who then contemporaneously shared that competitively

sensitive information with the Producing Defendants.

37.    Having access to non-anonymized, competitively sensitive non-public

information exchanged through Commodity allowed the Producing Defendants to ensure that they would not undercut each other's prices or cause prices to decrease.  The Producing Defendants were only able to obtain each other's competitively sensitive information due to their unlawful agreement.

38.    These reciprocal exchanges of information occurred rapidly, often within hours of receipt, and that information was used by the Producing Defendants in deciding how much to charge for their Granulated Sugar.  The sharing of information between the Producing Defendants thus enabled them to artificially raise, fix, maintain, or stabilize the prices at which Granulated Sugar was sold to their customers pursuant to their anticompetitive agreement.

39.    The Producing Defendants know that sharing competitively sensitive non-public information is anticompetitive and violates the spirit and purpose of the antitrust laws. Commodity too understands that the competitively sensitive information it obtains from the Producing Defendants is not ordinarily disclosed to competitors.  The purpose of their sharing was to further their illegal scheme to raise, fix, maintain, stabilize, or coordinate prices of Granulated Sugar in the United States.

40.    Defendants ASR Group, Cargill, and United each publish a code of conduct on their websites which assures its business partners and the public at large that they operate in a lawful and ethical manner.

41.    ASR Group's Code of Ethics and Business Conduct contains a specific section on "Following Antitrust and Competition Laws," which prohibits "[a]greements with competitors to fix or control prices."[7]

---

[7] Code of Ethics and Business Conduct, ASR GROUP, (Jan. 22, 2020), https://www.asr-group.com/sites/asr_group_com/files/2023-01/ASR%20Group%20-%20Code%20of%20Ethics%20and%20Business%20Conduct%20%282020-01- 20%29%20English%20-%20Final%20-%20Website%20%281%29.pdf (last accessed May 22, 2024).

42.     Similarly, Cargill's Code of Conduct states that "All employees are expected to follow competition laws, as well as Cargills' own competition policy. Employees must also be careful when interacting with competitors—for instance, in connection with trade associations and benchmarking.  Another way of preserving fair and honest competition involves the proper collection and use of competitive intelligence.  Gathering competitive information and business data is an appropriate business practice, but it must be done legally and ethically."  Cargill also explicitly instructs its employees "Don't: Discuss prices, sales plans or volumes with competitors."[8]

43.     United's Code of Business Conduct and Ethics states "Our employees, officers, directors, agents and other representative must maintain the confidentiality of confidential information entrusted to them by us or our customers, except when disclosure is authorized in writing by a supervisor or required by laws or regulations. Confidential information includes, without limitation, any information that derives independent value because it is not known by third parties, including United Sugar's competitors or the general public, whether or not expressly identified as confidential."[9]  United does not publish the company's current Granulated Sugar prices or its sold position (i.e., the percentage of its crop that is booked for the current fiscal year).

44.     Despite these policies, the Producing Defendants knowingly and intentionally shared competitively sensitive information with each other, through Commodity and Mr. Wistisen, pursuant to their anticompetitive agreement to raise, fix, maintain, or stabilize

---

[8] Our Guiding Principles: Cargill Code of Conduct, CARGILL,
https://www.cargill.com/doc/1432076403017/guiding-principles-en.pdf (last accessed May 22, 2024).

[9] Code of Business Conduct and Ethics, UNITED SUGARS CORP., https://unitedsugarpr.com/wp-content/uploads/2021/04/United-Sugars_-Code-of-Conduct-and-Ethics-Updated-March-2020.pdf (last accessed May 22, 2024).

Granulated Sugar prices.

45.    The Producing Defendants used the information they received from Commodity and Mr. Wistisen when deciding how much to charge for their products pursuant to their price-fixing agreement.

46.    High-ranking executives at the Producing Defendants shared competitively sensitive information with Mr. Wistisen.  These same executives had direct involvement in pricing decisions.  The sharing of information between the Producing Defendants allowed them to raise, fix, maintain, or stabilize Granulated Sugar prices pursuant to their unlawful agreement.

47.    Mr. Wistisen's conduct during the Class Period facilitated and aided the price-fixing of sugar between competitors.  The instances of Mr. Wistisen and the Producing Defendants sharing of competitive information are numerous.

48.    In August 2020, Mr. Wistisen shared Michigan Sugar's pricing and sold positions telling ASR/Domino's Mr. Alan Henderson, "My goodness, what a difference a month makes. Michigan 85+% booked."

49.    On August 17, 2020, Mr. Wistisen wrote to Mr. Henderson, providing him with sugar market updates and asked: "Where would you put cane prices and coverage?" The next day, August 18, Mr. Henderson responded: "Quick update: Pricing: [next three lines redacted]."

50.    The next month, Mr. Wistisen reported, "Michigan holding forecasts unchanged, sugars nearing 16%, factories running well, stockpiling on Oct. 19th." He added with regard to pricing that Michigan was at "$38.5+, selective selling."

51.    On September 21, 2020, Mr. Wistisen separately asked, within minutes, ASR/Domino's Mr. Henderson and United's Mr. Eric Speece if there was "anything new of interest on the pricing front?"  They each responded with their company's respective pricing and

sold positions.  Mr. Speece shared, "We are firm at $36.50 (no change) and now $38.50 on cane (an increase of $0.50/cwt) and yes you heard correctly we are 90+% sold."  In response, Commodity thanked United "for keeping the communication lines open!"

52.    Mr. Wistisen then emailed this information to Mr. Henderson, saying, "United also 90+% (including cane) not sure on price, last indication was early Sep, were still in market and mostly firm at $36.50 and $38. Just getting started on cane side. Early read suggests $38-40, so down on the coasts and up in south." Mr. Henderson responded, "Lots of meeting[s] this week so I'll keep it short. Pricing (Cane)[:] North and mid-Atlantic - $40.50 to 41.00 FOB – prices were lower past few weeks but have firmed up to these levels. No discounting at this time. Gulf - $38.50 fob[.] West - $40.50 to $41.00 fob firm[.]"

53.    Within a hours of receiving Mr. Henderson's response, Mr. Wistisen emailed United and ASR/Domino with the information. Mr. Wistisen told ASR/Domino that "U.S. Sugar recently increased to $38.50, so looks like range is $38.50 to $41, nice increase over last month… . Beet not much change from earlier indications, prices are $36.50 to $38.75, very little sugar available at low price, industry coverage 87%, all but NSM over 90+% booked."  Mr. Wistisen wrote to United, "ASR saying back up to $40.50 to $41. So now I have cane range at $38.50 to $41 Coverage… . ASR 5% below that, and other southern refiners up 10-15% from the average… . Waiting to confirm from Michigan, but Midwest ranging from $36.50 to 38.75, very little available at low price (so I hear)."

54.    Further, on September 21, 2020, Mr. Wistisen reported to ASR/Domino's Mr. Henderson, "Hearing beets well sold, except possibly NSM 80 to 85 percent and prices firm to higher. Michigan $38.50 plus selective selling…"

55.    On November 16, 2020, Mr. Wistisen contacted United's Mr. Speece and asked,

"Where would you put spot and forward beet prices?" Approximately 38 minutes later, Mr. Wistisen asked Mr. Henderson, "Where would you put prices and cane coverage?" Both Mr. Speece and Mr. Henderson responded that same day with pricing information.

56.    November 17, 2020, Mr. Wistisen emailed United's Mr. Speece and relayed the specific pricing information that Mr. Henderson shared with him the day prior: "ASR saying prices keep climbing: $46 spot all locations….Waiting to hear back from most contacts… ." Mr. Wistisen also emailed Mr. Henderson that same day and forwarded the pricing information shared by Mr. Speece.

57.    In a November 2020 email, ASR/Domino's Mr. Henderson emailed Mr. Wistisen, "Prices have firmed up again based on higher #16 values, beets close to sold out and less imports, tier 2 sugar available at this time. Near-by values back up to $46.00 FOB all locations. For calendar 2021: East/West - $42.00 fob[;] Gulf - $39.50 fob[;] Cane Coverage – 85-90%[.]" Mr. Wistisen responded by providing United's pricing to ASR/Domino.

58.    Also in November 2020, Mr. Wistisen emailed ASR/Domino asking for "[a]ny guidance [ASR/Domino] could give on how sub-30 cent No 16 prices makes sense?" Mr. Henderson and Mr. Wistisen exchanged messages regarding the "reason" Mr. Henderson had "heard," and Mr. Wistisen responded with real-time information from competitor United, "Long conversation with United: won't set FY22 price list until March, but the plan remains to hold steady at $36.50 and $38.50 based on demand, inventories, No. 16, and looking down the road and expecting another year of tight quotas in FY22…. Selling FY21 firm, good activity, little to no competition from NSM or Western." Mr. Henderson shared this with others at ASR/Domino, noting, "United is usually pretty upfront with [Wistisen]."

59.    On February 15, 2021, Mr. Wistisen wrote to United's Mr. Speece, "Any action in

FY22? Has United put a number on it yet? No word back from other processors/Refiners, I'll send along indications." Mr. Speece responded, "We are still at the $36.50 and $38.50 with zero problems selling at those values. I do not anticipate any changes to our prices, but we have not formally decided. No action on 2022 just some small inquiries." Mr. Wistisen then asked, "Just to clarify: United has not issued FY22 list prices, and at this point doesn't expect FY22 prices to change much from remainder FY21?" On February 16, 2021, Mr. Speece answered: "Give me a ring and we can discuss."

60.    On February 17, 2021, Mr. Wistisen engaged in an email exchange with ASR/Domino's Mr. Henderson about United's prospective pricing strategy.  Mr. Wistisen responded, "Long conversation with United: won't set FY22 price list until March, but the plan remains to hold steady at $36.50 and $38.50 based on demand."

61.    On April 29, 2021, Mr. Wistisen wrote to Mr. Henderson, "Where would you put price ranges and demand? I have spot $36.50 firm Midwest, $39.00 firm Michigan (but watching Baltimore progress, could creep higher), and east and west coasts now at $44.00. And forward I have quoting at $35.50-$36 Midwest, 37.50-38 Gulf, $42.00 Coasts." Mr. Henderson responded, "I believe your pricing numbers below are very accurate."

62.    In May of 2021, ASR/Domino provided Mr. Wistisen with FY21 pricing. Mr. Wistisen responded that United's "prices [were] unchanged."

63.    Mr. Sproull testified during the *United States v. U.S. Sugar Corp.* trial that he received an email from ASR/Domino's Mr. Henderson discussing Cargill pricing information that originated from "Rich Wistisen," "the sugar industry analyst."

64.    Mr. Speece testified during the *United States v. U.S. Sugar Corp.* trial that he had email correspondence with Mr. Wistisen where Mr. Wistisen passed "along information about

how much business Cargill has booked for the 2021 fiscal year."

65.    On June 16, 2021, Mr. Wistisen wrote to ASR/Domino, "The word from United: 80- 85% sold, will be at 90 very soon. Beet holding at $36.50 firm, and cane increased to $39.50 firm… . Any changes in ASR/Domino forward prices? I have you at [redacted] and [redacted]." Later, Mr. Wistisen adds: "The United info I provided was direct from them this morning."

66.    On July 12, 2021, Mr. Wistisen asked ASR/Domino, "What's happening on the cane side of the fence? Sounds like you're now [redacted], and Imperial $49. Where would you put forward pricing and coverage?" Mr. Henderson responded, "United price increase. Rich is thinking $2.00 increase but no official word yet."

67.    In July of 2021, Wistisen emailed Mr. Henderson informing him that, "the United info I provided was direct from them this morning.… They are a hair shy of 90% sold."  That same month, Mr. Wistisen also provided Mr. Henderson pricing information regarding Cargill, to which Mr. Henderson responded, "Cargill also makes no sense… . Last I heard they were at $38.50 gross fob bulk Gramercy."

68.    These exchanges of competitively sensitive information have no plausible, non-conspiratorial justification.  Rather, as the following paragraphs detail, these information exchanges were expressly and intentionally used for price fixing.

69.    Information obtained about other competitors from Mr. Wistisen was regularly forwarded by ASR/Domino's Mr. Henderson to his sales team and his superior. For example, Mr. Henderson received, and forward to his subordinates, information from Mr. Wistisen that United would likely be adding bookings and raising prices over the following month, and "not by just a dollar."  In another example, Mr. Henderson sent to his boss, Mr. Sproull, information on competitors' inventory position that he received from Mr. Wistisen.

70.    In September 2019, United's CEO stated that United tried to push prices higher by putting an expiration date on pending offers, which he explained sent a message to "competitors that we were not interested in allowing the market to slip lower."  Similar documents unveiled by the DOJ further reveal a Domino executive stating, "[w]e need to signal to the market that we're going to maintain price," one executive stating that the "main downside" to lowering an Imperial bid "would be snatching something from United just as they are starting to show some upside price movement."

71.    On January 8, 2020, ASR's Rob Sproull emailed Mr. Henderson stating, "I think it's really important we signal to the market that there's still going to be tightness…We need to signal to the market that we're going to maintain price, especially for the Oct- Dec quarter."

72.    On January 20, 2021, United's Mr. Speece emailed a colleague at United, Dirk Swart, that one competitor was selling at too low a price and suggested, "May want to communicate pricing earlier than the colloquium to send a msg."

73.    On June 18, 2020, ASR Group's Mr. Henderson emailed his colleague, Adam Whittaker regarding a quote needed for a customer, where he stated he "would love to get aggressive here [on pricing]" but that "[w]e would like to avoid sending a signal out to competitors that we are chasing business and lowering price off the standard $41.00 bulk basis."

74.    In a November 16, 2020 email, United's Mr. Swart emailed Mr. Speece, stating that he wanted Mr. Wistisen to "hear" that United's current beet sugar price was $36.50 and cane sugar price was $38.

75.    Moreover, United has raised prices in part to "send[] a message" to its competitors "that we were not interested in allowing the market to slip lower."  United's CEO Matthew Wineinger has testified that he was "confident" that "word got back" to United's

competitors.

76.     Defendants knew and intended that their private exchanges of competitively sensitive information about prices and sold positions would allow them to artificially raise, fix, maintain, or stabilize Granulated Sugar prices above the levels they would have been absent the anticompetitive conduct alleged herein.

77.     The Producing Defendants are the dominant producers in the sugar industry and account for the majority of Granulated Sugar production and sales.  As such, the Producing Defendants are not competitively restrained by smaller market participants.

**C.    Defendants' Conspiracy Artificially Inflated Granular Sugar Prices**

78.     During the Class Period, Granulated Sugar prices became significantly elevated as a direct result of Defendants' illegal conduct.

79.     The price of Granulated Sugar increased dramatically without any economic rational basis and contrary to pre-Class Period pricing patterns.

80.     Moreover, sugar prices increased dramatically during the Class Period without a decline in the supply of sugar.  In the past 20 years, the price of Granulated Sugar has doubled on an indexed basis.

81.     Since the beginning of the Class Period, Granulated Sugar prices have experienced one of the steepest climbs ever, which is ongoing.

82.     There is no non-conspiratorial economic rationale for the rate of price increases.

**D.    Antitrust Injury and Damages**

83.     Defendants' anticompetitive conduct had the following effects: A) Price competition has been restrained or eliminated with respect to Granulated Sugar; B) The price of Granulated Sugar has been fixed, raised, stabilized, or maintained at artificially,

-17-

supracompetitive levels; C) Indirect purchasers of Granulated Sugar have been deprived of free and open competition; and D) Indirect purchasers of Granulated Sugar paid artificially inflated prices.

84.     The purpose of Defendants' conspiratorial conduct was to increase, fix, or maintain the prices of Granulated Sugar in the United States, and, as a direct and foreseeable result of the conspiratorial conduct, Plaintiff and the Class Members purchased Granulated Sugar at artificially inflated prices during the Class Period.

85.     By reason of the alleged violations of the antitrust laws, Plaintiff and the Class Members have sustained injury, having purchased Granular Sugar for higher prices during the Class Period than they would have paid in the absence of Defendants' illegal conspiracy.  As a result, Plaintiff and the Classes have suffered damages.

86.     This is an injury of the type that the antitrust laws were meant to punish and prevent.

87.     Granulated Sugar and the associated overcharges resulting from Defendants' anticompetitive conduct follow a physical chain from the Producing Defendants to Plaintiff and Class Members that can be traced.  An overcharge at the top of a multi-level distribution chain will result in higher prices at every level of distribution below. Therefore, at least some portion of an anticompetitive overcharge will be passed on to end-users.

88.     Well-accepted econometric models can be used to measure both the extent and the amount of overcharge passed through the various levels of distribution.  As a result, the economic harm to Plaintiff and class members can be readily quantified.

### VI.    EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

89.     Plaintiff and other Class Members had neither actual nor constructive knowledge of the facts constituting their claim for relief until, at the earliest, the DOJ's Findings of Fact in

support of its petition to stop the merger of United and Imperial were made public.

90.     Defendants' anticompetitive conspiracy, by its very nature, was self-concealing. Defendants are not exempt from antitrust regulation, and thus, Plaintiff and the other Class Members reasonably considered the Granular Sugar industry to be competitive until recently.

91.     Plaintiff exercised reasonable diligence. Plaintiff and the other Class Members could not have discovered the alleged conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and co-conspirators to conceal their combination.

92.     Throughout the Class Period, Defendants effectively, affirmatively, and fraudulently concealed their unlawful combination and conspiracy from Plaintiff and the other Class Members.

93.     The combination and conspiracy alleged herein was fraudulently concealed by Defendants by various means and methods, including, but not limited to, Defendants' published codes of ethics assuring its business partners and the public at large that they operate in a lawful and ethical manner.

94.     These false representations were used to conceal the conspiracy.

95.     By virtue of Defendants' fraudulent concealment of their wrongful conduct, the running of any statute of limitations has been tolled and suspended with respect to any claims and rights of action that Plaintiff and the other Class Members have as a result of the unlawful conspiracy alleged in this Complaint.

## VII.    CLASS ACTION ALLEGATIONS

96.     Plaintiff brings this action on behalf of herself, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a) and (b)(2) seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> **Nationwide Class:** All persons in the United States who indirectly purchased Granulated Sugar from one of the Producing Defendants in the United States for personal use beginning on January 1, 2019 and running through the time that the unlawful conduct alleged herein ceases.

97.    Plaintiff also brings this action on behalf of herself, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a) and (b)(3) seeking damages pursuant to antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of the following Class (the "Damages Class"):

> **Damages Class:** All persons who indirectly purchased Granulated Sugar from one of the Producing Defendants, in the End-User Purchaser States[10], for personal use beginning on January 1, 2019 and running through the time that the unlawful conduct alleged herein ceases.

98.    The Nationwide Class and Damages Class are referred to collectively as the "Classes" and members of both classes are collectively referred to as "Class Members" unless otherwise indicated.  The following persons and entities are excluded from the proposed Class: Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; federal, state, or local governmental entities; and the court and any of its staff.

99.    The Class definitions provide clear, objective criteria understood by Class Members and Defendants, and it allows the parties to identify the members of the Classes.

100.    Subject to additional information obtained through further investigation and discovery, the Class definitions may be expanded or narrowed.

101.    The Classes are so numerous that joinder of all members of the Classes in this action is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the proposed Classes contain hundreds of thousands, if not millions, of similarly situated customers.

---

[10] The End-User Purchaser States are the states listed in Counts Two and Three.

102.    The Classes are readily identifiable and are ones for which records should exist.

103.    Plaintiff's claims are typical of those of the Classes. Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the Classes, and the relief sought is common to the Classes.

104.    Plaintiff and Class Members were injured by the same unlawful conduct, which resulted in them receiving less in value for Granulated Sugar (by overpaying for those products) than they would have in a competitive market.

105.    Plaintiff will fairly and adequately protect and represent the interests of the Classes. The interests of the Plaintiff are aligned with, and not antagonistic to, the Classes.

106.    Questions of law and fact common to Class Members predominate over questions, if any, that may affect only individual members because Defendants have acted and refused to act on grounds generally applicable to Class Members.

107.    Questions of law and fact common to the Classes include:

- Whether Defendants engaged in an agreement, combination, or conspiracy to fix, inflate, maintain, or stabilize the prices paid for Granulated Sugar;

- The duration of the conspiracy alleged herein and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

- Whether such agreements constituted violations of the Sherman Antitrust Act;

- Whether such agreements constituted violations of the End-User Purchaser States' unfair competition, consumer protection and unjust enrichment laws;

- The identity of the participants of the alleged conspiracy;

- Whether Defendants fraudulently concealed their misconduct;

- Whether and to what extent Defendants' anticompetitive scheme inflated prices of Granulated Sugar above competitive levels;

- The extent that any overcharge was passed through to Plaintiff and Class Members;

- The nature and scope of injunctive relief necessary to restore competition; and

- The measure of damages suffered by Plaintiff and the Damages Class.

108.    Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action antitrust litigation.

109.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The relatively small damages suffered by individual members of the Classes compared to the expense and burden of individual prosecution of the claims asserted in this litigation means that, absent a class action, it would not be feasible for members of the Classes to seek redress for the violations of law herein alleged.  Further, individual joinder of all damaged members of the Classes is impractical, and the prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.  Accordingly, the benefits of proceeding through the class mechanism, including providing injured persons with a method of obtaining redress for claims that are not practicable for them to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

110.    Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief appropriate with respect to the Classes as a whole.

### VIII.   CLAIMS FOR RELIEF

### COUNT 1: VIOLATION OF § 1 OF THE SHERMAN ACT (15 U.S.C. § 1)
### (On Behalf of Plaintiff and the Nationwide Class for Injunctive and Equitable Relief)

111.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

112.    Defendants are direct competitors in the Granulated Sugar market throughout the

United States.

113.    Beginning at least as early as January 1, 2019 and continuing through the present, Defendants entered into a continuing contract, combination, and/or conspiracy with respect to the sale of Granulated Sugar in unreasonable restraint of trade and commerce and in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

114.    The contract, combination, and/or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize and/or maintain artificially supra-competitive prices for Granulated Sugar.

115.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy.  Defendants' conspiracy had the following effects, among others:

a) Price competition in the sale of Granulated Sugar has been restrained, suppressed, and/or eliminated in the United States;

b) Prices for Granulated Sugar sold, directly and indirectly, by Defendants and all of their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, noncompetitive levels throughout the United States; and

c) Those who purchased Granulated Sugar indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition, resulting in artificially high prices paid for Granulated Sugar.

116.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices with respect to Granulated Sugar.

117.    Defendants' anticompetitive acts described above were knowing, willful, and

constitute a per se violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and were an unreasonable and unlawful restraint of trade.

118.    There is no legitimate business justification for, or pro-competitive benefits attributable to, Defendants' conspiracy and overt acts in furtherance thereof.  Any proffered business justification or asserted pro-competitive benefits would be pretextual, outweighed by the anticompetitive effects of Defendants' conduct, and could be achieved by means less restrictive than the conspiracy and overt acts alleged herein.

119.    The injury to Plaintiff and the Nationwide Class is of the type that antitrust laws were designed to prevent and flow directly from Defendants' unlawful conduct.

120.    Plaintiff and the Nationwide Class are threatened with future injury to their business and property by reason of Defendants' continuing violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

121.    Plaintiff and Class Members are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

### COUNT 2: VIOLATION OF THE STATE ANTITRUST STATUTES
#### (On Behalf of Plaintiff and the Damages Class)

122.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

123.    During the Class Period, Defendants engaged in a continuing contract, combination, or conspiracy with respect to the sale of Granulated Sugar in unreasonable restraint of trade in commerce, in violation of the various state antitrust and consumer protection statutes set forth below.

124.    Defendants' acts and combinations in furtherance of the conspiracy have caused unreasonable restraints in the market for Granulated Sugar.

125.    As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated

End Users in the Damages Class who purchased Granulated Sugar have been harmed by being forced to pay artificially-inflated, supra-competitive prices for Granulated Sugar.

126.     By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in violation of the following state antitrust laws pleaded below.

127.     **Arizona:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1402, et seq. with respect to purchases of Granulated Sugar in Arizona by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in Arizona at the time of their purchase.

    a)     Defendants' combination or conspiracy had the following effects:

        (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Granulated Sugar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

    b)     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    c)     Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, et seq.  Accordingly, members of the

Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1402, et seq.

128.     **California:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Cal. Bus. And Prof. Code, §§ 16720, et seq. with respect to purchases of Granulated Sugar in California by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in California at the time of their purchases.

a)     During the Class Period, Defendants entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of Granulated Sugar at supra-competitive levels.

b)     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of Granulated Sugar.

c)     For the purpose of forming and effectuating the unlawful trust, the Defendants have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above including fixing, raising, stabilizing, and pegging the price of Granulated Sugar.

d)      The combination and conspiracy alleged herein has had, inter alia, the following effects: (1) price competition in the sale of Granulated Sugar has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for Granulated Sugar sold by Defendants have been fixed, raised, stabilized, and pegged at artificially high, non- competitive levels in the State of California and throughout the United States; and (3) those who purchased Granulated Sugar have been deprived of the benefit of free and open competition.

e)      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property in that they paid more for Granulated Sugar than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

129.    **Colorado:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Col. Rev. Stat. Ann. §§6-4-104, et seq. with respect to purchases of Granulated Sugar in Colorado by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in Colorado at the time of their purchase.

a)      Defendants' combination or conspiracy had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and

eliminated throughout Colorado; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Colorado; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

b)      During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce.

c)      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Col. Rev. Stat. Ann. §§6-4-104, et seq. Accordingly, members of the Damages Class seek all forms of relief available under Col. Rev. Stat. Ann. §§6-4-104, et seq.

130.    **Connecticut**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Conn. Gen. Stat. Ann. §§ 35-26, et seq. with respect to purchases of Granulated Sugar in Connecticut by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in Connecticut at the time of their purchases.

a)      Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Connecticut; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Connecticut; (3) members of the Damages Class were

deprived of free and open competition; and (4) members of the
Damages Class paid supra-competitive, artificially inflated prices for
Granulated Sugar.

b)  During the Class Period, Defendants' illegal conduct substantially affected
Connecticut commerce.

c)  As a direct and proximate result of Defendants' unlawful conduct,
members of the Damages Class have been injured in their business and
property and are threatened with further injury.

d)  By reason of the foregoing, Defendants have entered into agreements in
restraint of trade in violation of Conn. Gen. Stat. Ann. §§ 35-26, et seq.
Accordingly, members of the Damages Class seek all forms of relief
available under Conn. Gen. Stat. Ann. §§ 35-26, et seq.

131.  **District of Columbia**: Defendants have entered into an unlawful agreement in
restraint of trade in violation of D.C. Code Ann. §§ 28-4502, et seq. with respect to purchases of
Granulated Sugar in the District of Columbia by members of the Damages Class and/or
purchases of Granulated Sugar by members of the Damages Class who resided in the District of
Columbia at the time of their purchases.

a)  Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and
eliminated throughout the District of Columbia; (2) Granulated Sugar
prices were raised, fixed, maintained, and stabilized at artificially high
levels throughout the District of Columbia; (3) members of the
Damages Class were deprived of free and open competition; and (4)

members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

b)      During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

c)      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4502, et seq.  Accordingly, members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4502 et seq.

132.    **Hawaii:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Haw. Red. Stat. § 480-1, et seq. with respect to purchases of Granulated Sugar in Hawaii by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in Hawaii at the time of their purchases.

a)      Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

b)      During the Class Period, Defendants' illegal conduct substantially affected

Hawaii commerce.

c)      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Haw. Code § 480-1, et seq. Accordingly, members of the Damages Class seek all forms of relief available under Haw. Code § 480-1, et seq.

133.    **Illinois**: Defendants have entered into an unlawful agreement in restraint of trade in violation of 740 Ill. Comp. Stat. Ann. 10/1, et seq. with respect to purchases of Granulated Sugar in Illinois by members of the Damages Class and/or purchasers of Granulated Sugar by members of the Damages Class who resided in Illinois at the time of their purchases.

a)      Defendants' combination or conspiracy had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for Granulated Sugar.

b)      During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

c)      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and

property and are threatened with further injury.

d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Ill. Comp. Stat. Ann. 10/1, et seq. Accordingly, members of the Damages Class seek all forms of relief available under 740 Ill. Comp. Stat. Ann. 10/1, et seq.

134.    **Iowa**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Iowa Code §§ 553.4, et seq. with respect to purchases of Granulated Sugar in Iowa by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in Iowa at the time of their purchases.

a)     Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar competition was restrained, suppressed, and eliminated throughout Iowa; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

b)     During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

c)     As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.4, et seq. Accordingly,

members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.4, et seq.

135.    **Kansas**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Kan. Stat. Ann. §§ 50-101, et seq. with respect to purchases of Granulated Sugar in Kansas by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in California at the time of their purchases.

   a)    Defendants' combination or conspiracy had the following effects:

   (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

   b)    During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

   c)    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

   d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, et seq. Accordingly, members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, et seq.

136. **Maine:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Me. Rev. Stat. Ann. 10 §§ 1101, et seq. with respect to purchases of Granulated Sugar by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in Maine at the time of their purchases.

    a)      Defendants' combination or conspiracy had the following effects:

        (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Maine; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

    a) During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

    b) As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    c) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Me. Rev. Stat. Ann.10, §§ 1101, et seq. Accordingly, members of the Damages Class seek all relief available under Me. Rev. Stat. Ann. 10, §§ 1101, et seq.

137. **Michigan**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Mich. Comp. Laws Ann. §§ 445.772, et seq. with respect to purchases of Granulated Sugar in Michigan by members of the Damages Class and/or purchases of

Granulated Sugar by members of the Damages Class who resided in Michigan at the time of their purchases.

a)    Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Granulated Sugar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

b)    During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

c)    As a direct and proximate result of Defendants' conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have entered into agreement in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.772, et seq. Accordingly, members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.772, et seq.

138.    **Minnesota:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Minn. Stat. §§ 325D.51, et seq. with respect to purchases of Granulated Sugar in Minnesota by Plaintiff Sandra Kluessendorf and members of the Damages Class and/or purchases of Granulated Sugar by Plaintiff Sandra Kluessendorf and members of the Damages

Class who resided in Minnesota at the time of their purchases.

    a)    Defendants' combination or conspiracy had the following effects:

        (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Granulated Sugar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff Sandra Kluessendorf and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff Sandra Kluessendorf and members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

    b)    During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

    c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Sandra Kluessendorf and members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.51, et seq. Accordingly, Plaintiff Sandra Kluessendorf and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.51, et seq.

139.   **Mississippi**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Miss. Code Ann §§ 75-21-3, et seq. with respect to purchases of Granulated Sugar in Mississippi by members of the Damages Class and/or purchases of Granulated Sugar by

members of the Damages Class who resided in Mississippi at the time of their purchases.

a)  Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

b)  During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

c)  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-3, et seq. Accordingly, members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75- 21-3, et seq.

140.  **Nebraska:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Neb. Code Ann. §§ 59-801, et seq. with respect to purchases of Granulated Sugar in Nebraska by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in Nebraska at the time of their purchases.

a)  Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

b)      During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

c)      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, et seq.  Accordingly, members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, et seq.

141.    **Nevada**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Nev. Rev. Stat. Ann. §§ 598A.060, et seq. with respect to purchases of Granulated Sugar in Nevada by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in Nevada at the time of their purchases.

a)      Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and eliminated through Nevada; (2) Granulated Sugar prices were raised,

fixed, maintained and stabilized at artificially high levels throughout

Nevada; (3) members of the Damages Class were deprived of free and

open competition; and (4) members of the Damages Class paid supra-

competitive, artificially inflated prices for Granulated Sugar.

b)    During the Class Period, Defendants' illegal conduct substantially affected

Nevada commerce.

c)    As a direct and proximate result of Defendants' unlawful conduct,

members of the Damages Class have been injured in their business and

property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.060, et

seq. Accordingly, members of the Damages Class seek all relief available

under Nevada Rev. Stat. Ann. §§ 598A.060, et seq.

142.    **New Hampshire**: Defendants have entered into an unlawful agreement in
restraint of trade in violation of N.H. Rev. Stat. Ann. §§ 356.2, et seq., with respect to purchases
of Granulated Sugar in New Hampshire by members of the Damages Class and/or purchases of
Granulated Sugar by members of the Damages Class who resided in New Hampshire at the time
of their purchases.

a)    Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and

eliminated throughout New Hampshire; (2) Granulated Sugar prices

were raised, fixed, maintained, and stabilized at artificially throughout

New Hampshire, (3) members of the Damages Class were deprived of

free and open competition; and (4) members of the Damages Class

paid supra-competitive, artificially inflated prices for Granulated

Sugar.

b)    During the Class Period, Defendants' illegal conduct substantially affected

New Hampshire commerce.

c)    As a direct and proximate result of Defendants' unlawful conduct,

members of the Damages Class have been injured in their business and

property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of New Hampshire Revised Statutes §§

356.2, et seq. Accordingly, members of the Damages Class seek all relief

available under New Hampshire Revised Statutes §§ 356:2, et seq.

143.    **New Mexico**: Defendants have entered into an unlawful agreement in restraint of
trade in violation of N.M. Stat. Ann. §§ 57-1-1, et seq. with respect to purchases of Granulated
Sugar in New Mexico by members of the Damages Class and/or purchases of Granulated Sugar
by members of the Damages Class who resided in New Mexico at the time of their purchases.

a)    Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and

eliminated throughout New Mexico; (2) Granulated Sugar prices were

raised, fixed, maintained, and stabilized at artificially inflated prices

for Granulated Sugar.

b)    During the Class Period, Defendants' illegal conduct substantially affected

New Mexico commerce.

c)    As a direct and proximate result of Defendants' unlawful conduct,

members of the Damages Class have been injured in their business and

property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of New Mexico Stat. Ann. S§ 57-1-1, et seq.

Accordingly, members of the Damages Class seek all relief available

under New Mexico Stat. Ann. §§ 57-1-1, et seq.

144.    **New York**: Defendants have entered into an unlawful agreement in restraint of

trade in violation of N.Y. Gen. Bus. L. §§ 340, et seq. with respect to purchases of Granulated

Sugar in New York by members of the Damages Class and/or purchases of Granulated Sugar by

members of the Damages Class who resided in New York at the time of their purchases.

a)    Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and

eliminated throughout New York; (2) Granulated Sugar prices were

raised, fixed, maintained, and stabilized at artificially high levels

throughout New York; (3) members of the Damages Class were

deprived of free and open competition; and (4) members of the

Damages Class paid supra-competitive, artificially inflated prices for

Granulated Sugar, or purchased products that were otherwise of lower

quality than they would have been absent the conspirators illegal acts,

or were unable to purchase products that they otherwise would have

purchased absent the illegal conduct.

b)     During the Class Period, Defendants' illegal conduct substantially

affected New York commerce.

c)    As a direct and proximate result of Defendants' unlawful conduct,
members of the Damages Class have been injured in their business and
property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have entered into agreements in
restraint of trade in violation of the New York Donnelly Act §§ 340, et seq.
The conduct set forth above is a per se violation of the Act. Accordingly,
members of the Damages Class seek all relief available under New York
Gen. Bus. Law §§ 340, et seq.

145.    **North Carolina**: Defendants have entered into an unlawful agreement in restraint
of trade in violation of N.C. Gen. Stat. §§ 75-1, et seq. with respect to purchases of Granulated
Sugar in North Carolina by members of the Damages Class and/or purchases of Granulated
Sugar by members of the Damages Class who resided in North Carolina at the time of their
purchases.

a)    Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and
eliminated throughout North Carolina; (2) Granulated Sugar prices
were raised, fixed, maintained, and stabilized at artificially high levels
throughout North Carolina; (3) members of the Damages Class were
deprived of free and open competition; and (4) members of the
Damages Class paid supra-competitive, artificially inflated prices for
Granulated Sugar.

b)    During the Class Period, Defendants' illegal conduct substantially affected

North Carolina commerce.

c)    As a direct and proximate result of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, et seq. Accordingly, members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, et seq.

146.    **North Dakota**: Defendants have entered into an unlawful agreement in restraint of trade in violation of N.D. Cent. Code §§ 51-08.1-01, et seq. with respect to purchases of Granulated Sugar in North Dakota by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in North Dakota at the time of their purchases.

a)    Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

b)    During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

c)      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08/1-01, et seq. Accordingly, members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51- 08.1-01, et seq.205.

147.    **Oregon**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Or. Rev. Stat. §§ 646.705, et seq., with respect to purchases of Granulated Sugar in Oregon by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in Oregon at the time of their purchases.

a)      Defendants' combination and conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

c)      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and

property and are threatened with further injury.

d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, et seq. Accordingly, members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, et seq.

148. **Rhode Island**: Defendants have entered into an unlawful agreement in restraint of trade in violation of R.I. Gen. Laws §§ 6-36-4, et seq. with respect to purchases of Granulated Sugar in Rhode Island by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in Rhode Island at the time of their purchases.

a) Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

b) During the Class Period, Defendants' illegal conduct substantially affected Rhode Island commerce.

c) As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d) By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of R.I. Gen. Laws §§ 6- 36-4, et seq.

Accordingly, members of the Damages Class seek all forms of relief

available under R.I. Gen. Laws §§ 6-13.1-1, et seq.

149.    **South Dakota**: Defendants have entered into an unlawful agreement in restraint

of trade in violation of S.D. Codified Laws An. §§ 37-1, et seq. with respect to purchases of

Granulated Sugar in South Dakota by members of the Damages Class and/or purchases of

Granulated Sugar by members of the Damages Class who resided in South Dakota at the time of

their purchases.

a)    Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and

eliminated throughout South Dakota; (2) Granulated Sugar prices were

raised, fixed, maintained and stabilized at artificially high levels

throughout South Dakota; (3) members of the Damages Class were

deprived of free and open competition; and (4) members of the

Damages Class paid supra-competitive, artificially inflated prices for

Granulated Sugar.

b)    During the Class Period, Defendants' illegal conduct had a substantial

effect on South Dakota commerce.

c)    As a direct and proximate result of Defendants' unlawful conduct,

members of the Damages Class have been injured in their business and

property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of South Dakota Codified Laws An. §§ 37-1,

et seq. Accordingly, members of the Damages Class seek all relief

available under South Dakota Codified Laws Ann. §§ 37-1, et seq.

150.    **Tennessee**: Defendants have entered into an unlawful agreement in restraint of

trade in violation of Tenn. Code Ann. §§ 47-25-101, et seq. with respect to purchases of

Granulated Sugar in Tennessee by Plaintiff and members of the Damages Class and/or purchases

of  Granulated Sugar by members of the Damages Class who resided in Tennessee at the time of

their purchases.

      a)      Defendants' combination or conspiracy had the following effects:

           (1) Granulated Sugar price competition was restrained, suppressed, and

              eliminated throughout Tennessee; (2) Granulated Sugar prices were

              raised, fixed, maintained, and stabilized at artificially high levels

              throughout Tennessee; (3) members of the Damages Class were

              deprived of free and open competition; and (4) members of the

              Damages Class paid supra-competitive, artificially inflated prices for

              Granulated Sugar.

      b)      During the Class Period, Defendants' illegal conduct had a substantial

           effect on Tennessee commerce.

      c)      As a direct and proximate cause of the Defendants' unlawful conduct,

           members of the Damages Class have been injured in their business and

           property and are threatened with further injury. By reason of the

           foregoing, Defendants have entered into agreements in restraint of trade in

           violation of Tennessee Code Ann. §§ 47-25-101, et seq. Accordingly,

           members of the Damages Class seek all relief available under Tennessee

Code Ann. §§ 47-25-101, et seq.

151.    **Utah**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Utah Code Ann. §§ 76-10-3101, et seq. with respect to purchases of Granulated Sugar in Utah by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in Utah at the time of their purchases.

    a)    Defendants' combination or conspiracy had the following effects:

        (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Utah; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

    b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

    c)    As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, et seq. Accordingly, members of the Damages Class seek all relief available under Utah Code Ann. §§ 76-10-3101, et seq.

152.    **Vermont**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Vt. Stat. Ann. 9 §§ 2453, et seq. with respect to purchases of Granulated

Sugar by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in Vermont at the time of their purchases.

    a)    Defendants' combination or conspiracy had the following effects:

        (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

    b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

    c)    As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, et seq. Accordingly, members of the Damages Class seek all relief available under Vermont Stat. Ann. §§ 2453, et seq.

153.    **West Virginia**: Defendants have entered into an unlawful agreement in restraint of trade in violation of W. Va. Code §§ 47-18-4, et seq. with respect to purchases of Granulated Sugar in West Virginia by members of the Damages Class and/or purchases of Granulated Sugar by members of the Damages Class who resided in West Virginia at the time of their purchases.

a)    Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

b)    During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

c)    As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, et seq. Accordingly, members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, et seq.

154.    **Wisconsin**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Wis. Stat. §§ 133.01, et seq. with respect to purchases of Granulated Sugar in Wisconsin by Plaintiff Sandra Kluessendorf and members of the Damages Class and/or purchases of Granulated Sugar by Plaintiff Sandra Kluessendorf and members of the Damages Class who resided in Wisconsin at the time of their purchases.

a)    Defendants' combination or conspiracy had the following effects:

(1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiff Sandra Kluessendorf and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff Sandra Kluessendorf and members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

c)      As a direct and proximate cause of the Defendants' unlawful conduct, Plaintiff Sandra Kluessendorf and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, et seq. Accordingly, Plaintiff Sandra Kluessendorf and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, et seq.

**COUNT 3: VIOLATION OF STATE CONSUMER PROTECTION LAW**
**(On Behalf of Plaintiff and the Damages Class)**

155.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

156.    During the Class Period, Defendants engaged in unfair or deceptive acts or practices in violation of the state deceptive trade practices and consumer protection laws pleaded below.

157.    **Arkansas**: Defendants have engaged in unfair or deceptive acts or practices in violation of Ark. Code Ann. § 4-88-101, et seq.

a)    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, raising, controlling, maintaining, and/or stabilizing at non-competitive and artificially inflated levels, the prices at which Granulated Sugar were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from members of the Damages Class.

b)    The aforementioned conduct on the part of Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88- 107(a)(10).

c)    Defendants' unlawful conduct had the following effects: (1) Granular Sugar price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Granular Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) members of the Damages Class were deprived of free and open competition; (4) members of the Damages Class paid supra-competitive, artificially inflated prices for  Granulated Sugar.

d)    During the Class Period, Defendants' illegal conduct had a substantial effect on Arkansas commerce.

e)    As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

f) By reason of the foregoing, Defendants have engaged in unfair or deceptive acts of practices in violation of Ark. Code Ann. § 4-88-107(a)(10). Accordingly, members of the Damages Class seek all relief available under Ark. Code Ann. § 4-88-107(a)(10).

158. **California**: Defendants have engaged in unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, et seq.

a) Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, raising, controlling, maintaining, and/or stabilizing at non-competitive and artificially inflated levels, the prices at which Granulated Sugar were sold, distributed, or obtained in California and exercised their collective control to suppress innovation and consumer choice.

b) Defendants took efforts to conceal their agreements from members of the Damages Class.

c) The claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution form these Defendants for acts as alleged herein that violated Section 17200 of the California Business and Professional Code, commonly known as the Unfair Competition Law (the "UCL").

d) Defendants conduct as alleged herein violates the UCL. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair,

-53-

unlawful, and/or fraudulent business accts or practices within the meaning of UCL, including, but not limited to, the following: the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, et seq., of the California Business and Professions Code, set forth above.

e)    Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, et seq., of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent.

f)    Defendants' acts or practices are unfair to consumers of Granulated Sugar in California within the meaning of Section 17200, California Business and Professions Code.

g)    Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

h)    During the Class Period, Defendants' illegal conduct had a substantial effect on California commerce.

i)    The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

j)    As a direct and proximate cause of the Defendants' unlawful and unfair business practices, members of the Damages Class have and continue to pay supra-competition and artificially-inflated prices for Granulated Sugar.

Members of the Damages Class have been injured in their business and property and are threatened with further injury as a result of such unfair competition.

k)  As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' u Cal. Bus. & Prof. Code § 17200, et seq.

159.  **District of Columbia**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, et seq.

a)  Members of the Damages class purchased Granulated Sugar in the District Columbia or resided in the District of Columbia when they purchased Granulated Sugar for personal, family, or household purposes.

b)  Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Granulated Sugar were sold, distributed or obtained in the District of Columbia.

c)  The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Members of the Damages class were not aware of Defendants' price-fixing conspiracy and were therefore unaware of the unfair and illegal overcharges. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers and a gross disparity between the price paid and the value received for Granulated

Sugar.

d)  Defendants unlawful conduct had the following effects: (1) Granular Sugar price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Granular Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) members of the Damages class were deprived of free and open competition; and (4) members of the Damages class paid supra-competitive, artificially inflated prices for Granulated Sugar.

e)  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages class were injured and are threatened with further injury. Accordingly, members of the Damages class seek all relief available under District of Columbia Code § 28-3901, et seq.

160.  **Florida**: Defendants have engaged in unfair, unconscionable or deceptive acts or practices in violation of Fla. Stat. § 501.201(1).

a)  Defendants agreed to and did in fact, act in restraint of trade or commerce by affecting, fixing, raising, maintaining, controlling, and /or stabilizing the price of Granulated Sugar and exercised their collective control to suppress innovation and consumer choice.

b)  Defendants concealed, suppressed, and omitted to disclose material facts to members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Granulated Sugar. The concealed, suppressed, and omitted facts would have been important to

members of the Damages class as they related to the Granulated Sugar that they purchased.

c)      Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Granulated Sugar by making public statements that were not in accord with the facts.

d)      Defendants' statements and conduct concerning the price of Granulated Sugar were deceptive as they had the tendency or capacity to mislead members of the Damages Class to believe that they were purchasing Granulated Sugar with prices established by a free and fair market.

e)      Defendants' unlawful conduct had the following effects: (1) Granular Sugar price competition was restrained, suppressed, and eliminated throughout Florida; (2) Granular Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for  Granulated Sugar.

f)      During the Class Period, Defendants' illegal conduct had a substantial effect on Florida commerce and consumers.

g)      As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

h)      By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of Fla. Stat. § 501.201(1), et seq.

Accordingly, members of the Damages Class seek all relief available under Fla. Stat. § 501.201(1), et seq.

161.    **Hawaii**: Defendants have engaged in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning of Hawaii Rev. Stat. § 480-2. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Granulated Sugar was sold, distributed or obtained in Hawaii.

a)    Members of the Damages Class purchased Granulated Sugar in Hawaii and/or purchased Granulated Sugar while residing in Hawaii at the time of their purchases.

b)    Defendants' unlawful conduct had the following effects: (1) Granular Sugar price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Granular Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

c)    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

d)    As a direct and proximate result of Defendants' unlawful conduct, and members of the Damages Class were injured and are threatened with further injury. Accordingly, members of the Damages Class seek all relief

available under the statute.

162.    **Illinois**: Defendants have engaged in unfair or deceptive acts or practices in violation of 815 Ill. Comp. Stat. Ann. 505/10a, et seq.

a)    Defendants worked together to fix, raise, maintain, and stabilize the price of Granulated Sugar and exercised their collective control to suppress innovation and consumer choice.

b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Illinois commerce.

c)    As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have engaged in unfair or deceptive acts of practices in violation of 815 Ill. Comp. Stat. Ann. 505/10a, et seq.  Accordingly, members of the Damages Class seek all relief available under 815 Ill. Comp. Stat. Ann. 505/10a, et seq.

163.    **Massachusetts**: Defendants have engaged in unfair or deceptive acts or practices in violation of 81 Massachusetts G.L. c. 93A, §2, et seq.

a)    Defendants were engaged in trade or commerce as defined in G.L. c. 93A.

b)    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, raising, maintaining, controlling and/or stabilizing the price of Granulated Sugar at artificial and non-competitive levels, the prices at which Granulated Sugar were sold, distributed, or obtained in Massachusetts and took efforts to

conceal their agreements from members of the Damages Class.

c)      Defendants' unlawful conduct had the following effects: (1) Granular

Sugar price competition was restrained, suppressed, and eliminated

throughout Massachusetts; (2) Granular Sugar prices were raised, fixed,

maintained, and stabilized at artificially high levels throughout

Massachusetts; (3) members of the Damages Class were deprived of free

and open competition; and (4) members of the Damages Class paid supra-

competitive, artificially inflated prices for Granulated Sugar.

d)      During the Class Period, Defendants' illegal conduct had a substantial

effect on Massachusetts commerce and consumers.

e)      As a direct and proximate cause of the Defendants' unlawful conduct,

members of the Damages Class have been injured in their business and

property and are threatened with further injury.

f)      Certain of Defendants have or will be served with a demand letter in

accordance with G.L. c. 93A, §9, or, upon information and belief, such

service of a demand letter was unnecessary due to the defendant not

maintaining a place of business within the Commonwealth of

Massachusetts or not keeping assets within the Commonwealth.

g)      Defendants' and their co-conspirators' violations of Chapter 93A were

knowing or willful, entitling members of the Damages Class to multiple

damages.

164.    **Minnesota**: Defendants have engaged in unfair, unconscionable, or deceptive acts

or practices in violation of Minn. Stat. § 325F.68, et seq.

a)      Defendants engaged in the conduct described in this Complaint in connection with the sale of Granulated Sugar in trade or commerce in a market that includes Minnesota.

b)      Defendants agreed to, and did in fact, affect, fix, raise, maintain, control, maintain and/or stabilize the price of Granulated Sugar at artificial and non-competitive levels, and exercised their collective control to suppress innovation and consumer choice. Such conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to members of the Damages Class.

c)      Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Granulated Sugar by making public statements that were not in accord with the facts.

d)      Defendants' statements and conduct concerning the price of Granulated Sugar were deceptive as they had the tendency or capacity to mislead members of the Damages Class to believe that they were purchasing Granulated Sugar at prices established by a free and fair market.

e)      Defendants' unlawful conduct had the following effects: (1) Granular Sugar price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Granular Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-

competitive, artificially inflated prices for Granulated Sugar.

 f) During the Class Period, Defendants' illegal conduct had a substantial effect on Minnesota commerce.

 g) As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class suffered ascertainable loss of money or property.

 h) By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of Minn. Stat. § 325F.68, et seq. Accordingly, Plaintiff Sandra Kluessendorf and members of the Damages Class seek all relief available under Minn. Stat. § 325F.68, et seq.

165. **Montana**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, et seq.

 a) Members of the Damages Class purchased Granulated Sugar in Montana for personal, family, or household purposes, or resided in Montana when they purchased Granulated Sugar in Montana for personal, family, or household purposes.

 b) Defendants' unlawful conduct had the following effects: (1) Granular Sugar price competition was restrained, suppressed, and eliminated throughout Montana; (2) Granular Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-

competitive, artificially inflated prices for Granulated Sugar.

    c)    During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

    d)    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class were injured and are threatened with further injury. Accordingly, members of the Damages Class seek all relief available under the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, et seq.

166.    **Nebraska**: Defendants have engaged in unfair methods competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, et seq.

    a)    Defendants' unlawful conduct had the following effects: (1) Granular Sugar price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Granular Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

    b)    During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

    c)    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class were injured and are threatened with further injury. Accordingly, members of the Damages Class seek all relief

available under the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, et seq.

167.   **Nevada:** Defendants have engaged in deceptive trade practices in violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903, et seq.

    a)    Defendants engaged in the conduct described herein in connection with the sale of Granulated Sugar in trade or commerce in a market that includes Nevada.

    b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Granulated Sugar were sold, distributed or obtained in Nevada, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to members of the Damages Class.

    c)    Defendants concealed, suppressed, and omitted to disclose material facts to members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Granulated Sugar. The concealed, suppressed, and omitted facts would have been important to members of the Damages Class as they related to the cost of Granulated Sugar that they purchased.

    d)    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Granulated Sugar by making public statements that were not in accord with the facts.

e)      Defendants' statements and conduct concerning the price of Granulated Sugar were deceptive as they had the tendency or capacity to mislead members of the Damages Class to believe that they were purchasing Granulated Sugar at prices established by a free and fair market.

f)      Defendants' unlawful conduct had the following effects: (1) Granular Sugar price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Granular Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar. As a direct and proximate result of the above-described unlawful practices, members of the Damages Class suffered ascertainable loss of money or property. Accordingly, members of the Damages Class seek all relief available under Nev. Rev. Stat. § 598.0993.

168.    **New Mexico**: Defendants have engaged in unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-3, et seq.

a)      Defendants worked together to fix, raise, maintain, and stabilize the price of Granulated Sugar and exercised their collective control to suppress innovation and consumer choice.

b)      During the Class Period, Defendants' illegal conduct had a substantial effect on New Mexico commerce.

c)      As a direct and proximate cause of the Defendants' unlawful conduct,

members of the Damages Class have been injured in their business and property and are threatened with further injury.

d) By reason of the foregoing, Defendants have engaged in unfair or deceptive acts of practices in violation of N.M. Stat. Ann. § 57-12- 3, et seq. Accordingly, members of the Damages Class seek all relief available under N.M. Stat. Ann. § 57-12-3, et seq.

169. **New York**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of New York Gen. Bus. Law § 349, et seq.

a) Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Granulated Sugar were sold, distributed or obtained in New York and took efforts to conceal their agreements from members of the Damages Class.

b) Defendants and their co-conspirators made public statements about the prices of Granulated Sugar that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Granulated Sugar; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

c) Because of Defendants' unlawful trade practices in New York, members of the Damages Class who purchased Granulated Sugar were misled to

believe that they were paying a fair price for Granulated Sugar or the price

increases for Granulated Sugar were for valid business reasons; and

similarly situated consumers were potentially affected by Defendants'

conspiracy.

d)      Defendants knew that their unlawful trade practices with respect to pricing

Granulated Sugar would have an impact on New York consumers and not

just Defendants' direct customers.

e)      Defendants knew that their unlawful trade practices with respect to pricing

Granulated Sugar would have a broad impact, causing customers who

purchased Granulated Sugar to be injured by paying more for Granulated

Sugar than they would have paid in the absence of Defendants' unlawful

trade acts and practices.

f)      The conduct of Defendants described herein constitutes consumer-oriented

deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law §

349, which resulted in consumer injury and broad adverse impact on the

public at large and harmed the public interest of New York State in an

honest marketplace in which economic activity is conducted in a

competitive manner.

g)      Defendants' unlawful conduct had the following effects: (1) Granular

Sugar competition was restrained, suppressed, and eliminated throughout

New York; (2) Granular Sugar prices were raised, fixed, maintained, and

stabilized at artificially high levels throughout New York; (3) members of

the Damages Class were deprived of free and open competition; and (4)

members of the Damages Class paid supra-competitive, artificially

inflated prices for Granulated Sugar.

h)      During the Class Period, Defendants marketed, sold, or distributed

Granulated Sugar in New York, and Defendants' illegal conduct

substantially affected New York commerce and consumers.

i)      Members of the Damages Class seek all relief available pursuant to N.Y.

Gen. Bus. Law § 349(h).

170.    **North Carolina**: Defendants have engaged in unfair or deceptive acts or practices

in violation of N.C. Gen. Stat. § 75-1.1, et seq.

a)      Defendants agreed to, and did in fact, act in restraint of trade or commerce

by fixing, raising, maintaining, and/or stabilizing the price of Granulated

Sugar at artificial and non-competitive levels and took efforts to conceal

their agreements from members of the Damages Class.

b)      Defendants' price-fixing conspiracy could not have succeeded absent

deceptive conduct by Defendants to cover up their illegal acts. Secrecy

was integral to the formation, implementation and maintenance of

Defendants' price-fixing conspiracy.  Defendants committed inherently

deceptive and self-concealing actions, of which members of the Damages

Class could not possibly have been aware.  Defendants and their co-

conspirators publicly provided pre-textual and false justifications

regarding their price increases.  Defendants' public statements concerning

the price of Granulated Sugar created the illusion of competitive pricing

controlled by market forces rather than supra-competitive pricing driven

by Defendants' illegal conspiracy.

c)      The conduct of Defendants described herein constitutes consumer-oriented

deceptive acts or practices within the meaning of North Carolina law,

which resulted in consumer injury and broad adverse impact on the public

at large and harmed the public interest of North Carolina consumers in an

honest marketplace in which economic activity is conducted in a

competitive manner.

d)      Defendants' unlawful conduct had the following effects: (1) Granular

Sugar price competition was restrained, suppressed, and eliminated

throughout North Carolina; (2) Granular Sugar prices were raised, fixed,

maintained, and stabilized at artificially high levels throughout North

Carolina; (3) members of the Damages Class were deprived of free and

open competition; and (4) members of the Damages Class paid supra-

competitive, artificially inflated prices for Granulated Sugar.

e)      During the Class Period, Defendants' illegal conduct had a substantial

effect on North Carolina commerce and consumers.

f)      As a direct and proximate cause of the Defendants' unlawful conduct,

members of the Damages Class have been injured in their business and

property and are threatened with further injury.

g)      By reason of the foregoing, Defendants have engaged om unfair or

deceptive acts of practices in violation of N.C. Gen. Stat. § 75-1.1, et seq.

Accordingly, members of the Damages Class seek all relief available

under N.C. Gen. Stat. § 75-1.1, et seq.

171.    **North Dakota**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the North Dakota Unfair Trade Practices Law, N.D. Cent. Code § 51-10, et seq.

a)    Defendants engaged in the conduct described in this Complaint in connection with the sale of Granulated Sugar in trade or commerce in a market that includes North Dakota.

b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Granulated Sugar were sold, distributed, or obtained in North Dakota, which conduct constituted a fraudulent or deceptive act or practice and caused substantial injury to members of the Damages Class.

c)    Defendants concealed, suppressed, and omitted to disclose materials facts to members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Granulated Sugar. The concealed, suppressed, and omitted facts would have been important to members of the Damages Class as they related to the cost of Granulated Sugar that they purchased.

d)    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Granulated Sugar by making public statements that were not in accord with the facts.

e)    Defendants' statements and conduct concerning the price of Granulated Sugar were deceptive as they had the tendency or capacity to mislead members of the Damages Class to believe that they were purchasing

Granulated Sugar at prices established by a free and fair market.

f)      Defendants' unlawful conduct had the following effects: (1) Granulated

Sugar price competition was restrained, suppressed, and eliminated

throughout North Dakota; (2) Granular Sugar prices were raised, fixed,

maintained, and stabilized at artificially high levels throughout North

Dakota; (3) members of the Damages Class were deprived of free and

open competition; and (4) members of the Damages Class paid supra-

competitive, artificially inflated prices for Granulated Sugar.

g)      As a direct and proximate result of the above-described unlawful

practices, members of the Damages Class suffered ascertainable loss of

money or property. Accordingly, members of the Damages Class seek all

relief available under N.D. Cent. Code § 51-10-06.

172.    **Rhode Island**: Defendants have engaged in unfair competition or unfair,

unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade

Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, et seq.

a)      Members of the Damages Class purchased Granulated Sugar for personal,

family, or household purposes.

b)      Defendants agreed to, and did in fact, act in restraint of trade or commerce

in a market that includes Rhode Island, by affecting, fixing, controlling,

and/or maintaining, at artificial and non-competitive levels, the prices at

which Granulated Sugar were sold, distributed, or obtained in Rhode

Island.

c)      Defendants deliberately failed to disclose material facts to members of the

Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Granulated Sugar. Defendants owed a duty to disclose such facts and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that Defendants' prices for Granulated Sugar were competitive and fair.

d)    Defendants' unlawful conduct had the following effects: (1) Granular Sugar price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Granular Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) members of the Class were deprived of free and open competition; and (4) members of the Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

e)    As a direct and proximate result of Defendants' violations of law, members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

f)    Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Granulated Sugar, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing Granulated Sugar at prices set by a free and fair market.

Defendants' affirmative misrepresentations and omissions constitute information important to members of the Damages Class as they related to the cost of Granulated Sugar that they purchased.

g) Accordingly, members of the Damages class seek all relief available under the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, et seq.

173. **South Carolina**: Defendants have engaged in unfair or deceptive acts or practices in violation of S.C. Code Ann. § 39-5-10, et seq.

a) Defendants worked together to fix, raise, maintain, and stabilize the price of Granulated Sugar and exercised their collective control to suppress innovation and consumer choice.

b) Defendants' combinations or conspiracies had the following effects: (1) Granular Sugar price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Granular Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Granulated Sugar.

c) During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

d) As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and

property and are threatened with further injury.

    e)    By reason of the foregoing, Defendants have engaged in unfair or deceptive acts of practices in violation of S.C. Code Ann. § 39-5-10, et seq.  Accordingly, members of the Damages Class seek all relief available under S.C. Code Ann. § 39-5-10, et seq.

174.    **Vermont**: Defendants have engaged in unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2453, et seq.

    a)    Defendants worked together to fix, raise, maintain, and stabilize the price of Granulated Sugar at artificial and non-competitive levels and exercised their collective control to suppress innovation and consumer choice.

    b)    Defendants deliberately failed to disclose material facts to members of the Damages Class concerning their unlawful activities and artificially inflated prices for Granulated Sugar.  Defendants owed a duty to disclose such facts and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that their prices for Granulated Sugar were competitive and fair.

    c)    Defendants' unlawful conduct had the following effects: (1) Granular Sugar price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Granular Sugar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-

competitive, artificially inflated prices for Granulated Sugar.

d)      As a direct and proximate result of Defendants' violations of law, members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

e)      During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

f)      Defendants' deception, including their omissions concerning the price of Granulated Sugar, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Granulated Sugar at prices born by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, et seq.

g)      As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

h)      By reason of the foregoing, Defendants have engaged in unfair or deceptive acts of practices in violation of Vt. Stat. Ann. Tit. 9, § 2453, et seq. Accordingly, members of the Damages Class seek all relief available Vt. Stat. Ann. Tit. 9, § 2453, et seq.

175.    **Wisconsin**: Defendants have engaged in unfair or deceptive acts or practices in violation of Wisc. Stat. § 100.18, et seq.

a)  Defendants worked together to fix, raise, maintain, and stabilize the price of Granulated Sugar and exercised their collective control to suppress innovation and consumer choice.

b)  During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

c)  As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)  By reason of the foregoing, Defendants have engaged in unfair or deceptive acts of practices in violation of Wisc. Stat. § 100.18, et seq. Accordingly, members of the Damages Class seek all relief available Wisc. Stat. § 100.18, et seq.

### COUNT 4: UNJUST ENRICHMENT
**(On Behalf of Plaintiff and the Damages Class)**

176.  Plaintiff incorporates by reference the allegations in the preceding paragraphs.

177.  To the extent required, this claim is pleaded in the alternative to the other claims in this Complaint.

178.  As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Granulated Sugar.

179.  Defendants have benefitted from their unlawful acts, and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff or the Class Members for Granulated Sugar.  Plaintiff and the members of the Damages Class are entitled to the amount of Defendants' ill- gotten gains

resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the members of the Damages Class may make claims on a pro rata basis.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Classes of all others similarly situated, respectfully requests that the Court grant judgment against Defendants as follows:

A.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

B.    For a judgment finding that Defendants' combination and conspiracy to raise the prices of Granulated Sugar violated the Sherman Act and various state antitrust and consumer protection laws as alleged herein;

C.    An Order appointing Plaintiff as a Class representative and appointing its counsel as Class Counsel for the Classes;

D.    An award to Plaintiff and the Class Members for actual damages trebled in an amount to be determined at trial;

E.    A permanent injunction under Section 16 of the Clayton Act, enjoining Defendants from engaging in any conduct deemed to be unlawful;

F.    An award to Plaintiff and the Classes of pre- and post-judgment interest as warranted;

G.    An award to Plaintiff and the Classes for their costs of suit, including reasonable attorneys' fees and expenses; and,

H.      Plaintiff and Class Members have such other and further relief as the case may require and the Court may deem just and proper.

## X.      DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), of all issues so triable.

Dated:  May 22, 2024                     Respectfully submitted,

                              */s/ Garrett Blanchfield*

                                  Garrett D. Blanchfield (#209855)
                                  Brant D. Penney (#316878)
                                  REINHARDT WENDORF & BLANCHFIELD
                                  80 So. 8th Street, Suite 900
                                  Minneapolis, MN 55402
                                  651-287-2100
                                  g.blanchfield@rwblawfirm.com
                                  b.penney@rwblawfirm.com


                                  *Attorneys for Plaintiff and Proposed Classes*